[Civ. No. 23246.   First Dist., Div. Two.   June 28, 1967.]

FITZ-GERALD AMES, SR., et al., Plaintiffs and Appellants, v. ROSE PRODON, Individually and as Executrix, etc., Defendant and Respondent.

Fitzgerald, Rattigan & Von Der Mehden, Fitzgerald & Von Der Mehden and Lloyd Von Der Mehden for Plaintiffs and Appellants.

Gordon B. Turner and Maurice E. Huguet, Jr., for Defendant and Respondent.

AGEE, J.—Plaintiffs appeal from a judgment of dismissal entered upon the sustaining of defendant's general and special demurrers to their Fourth Amended Complaint (hereafter "complaint") without leave to amend. The following factual summary is based upon the allegations of that complaint, which allegations are deemed to be true at this point.

Plaintiffs own a residential lot in a Sonoma County tract known as "Haciendas del Rio Golf and Country Club," subdivisions 1 to 9, inclusive. This action is brought by them on their own behalf and on behalf of all others who own similar residential lots in the tract. (Code Civ. Proc. § 382.)

Defendant owns a large parcel of tract property which has not been platted into individual lots and, in addition, the beaches within the tract which front on the Russian River.

The entire tract was originally owned by the developer, Hacienda, Inc. a California corporation. Present residential lot owners acquired title either by grant deed directly from this corporation or through mesne conveyances from grantees under deeds executed by the corporation.

The original deed in plaintiffs' chain of title was executed by Hacienda, Inc. on October 31, 1931 to one J. M. Bettencourt. The "covenants and conditions" set forth in this deed are identical to those included in all other deeds by which Hacienda, Inc. conveyed the residential lots. For convenience, discussion will be confined to the Bettencourt deed.[1]

---

[1]The pertinent portions of the prototype Bettencourt deed are as follows:

"SIXTH: It is understood that if the Grantors in future construct a Golf Course, Hotel, Store and Garage, and other facilities and accommodations for allied outdoor sports, or build a Lodge and Annex, Farm Buildings, Dairy, Stables, Kennels and other incidental buildings in or near said land where they will conduct a public resort, hotel business and tent village for the accommodation and convenience of their guests and those desiring to take advantage of said outdoor sporting facilities; that

The purpose of this action is to secure judicial declaration of the rights created by these "covenants and conditions" in regard to the above-mentioned tract property owned by defendant and to obtain injunctive relief to prevent interference with the use and enjoyment of such rights.

Said property was acquired by Angelo Frank Boles through mesne conveyances from Hacienda, Inc. and the record title thereto is in his name.[2] He had actual knowledge of the "covenants and conditions" under which plaintiffs claim.

In 1928, evidently during development of the tract, Hacienda, Inc. constructed a golf course, tennis court, golf and country club and clubhouse on a portion of the Boles' property. It maintained these facilities "for several years" thereafter.

---

the carrying on of such business includes the general catering business, merchandising, farming, maintaining of any or all sorts of domestic birds or animals for the Grantors or others, and that the carrying on of such business shall not be construed as a waiver of any of the conditions and provision in this deed or as the creating of a monopoly of any of said business, but that said business is carried on for the benefit of those who have established homes and residences in said subdivision, and their visitors, and for the benefit of the general public. . . .

"NINTH: Purchase of the above described land by the said Grantee shall carry with it the right of the Grantee to become a member of a golf club, which said club shall have the right to play golf on any course on said land belonging to the Grantor; in accordance with and subject to, however and not otherwise, the rules and regulations to be prescribed by the Grantors for the use of said golf club, which said rules the Grantee shall sign and agree to before the use of said golf course shall vest in him by virtue of this deed. The use of said golf course shall not be exclusive in said Grantee, but shall be used by said Grantee, in common with other purchasers of land in said subdivision or other subdivisions or lands under the control of the Grantors, or their guests, or the guests or tenants of the Grantors, and/or the public.

"TENTH: The foregoing covenants and conditions shall be enforcible by said Grantors or any of them, their grantees and successors in interest, and all such conditions shall run with the land and be incorporated in any and all deeds and agreements of sale made by said Grantee; and the grantee of said Grantee, in any deed or agreement of sale, shall also in such deed or agreement of sale covenant and agree that all said conditions shall be incorporated in and be made a part of any contract, deed or transfer of such property made by said Grantee and by all subsequent owners and holders of said property, or any part thereof. . . . .

"TWELFTH: The Grantors do hereby dedicate the use of the river front for the benefit and use of the Grantee and those who have established homes and residences in said subdivision, their visitors and for the benefit of the general public; nothing herein contained shall be construed however as a waiver of the Grantor's rights to remove sand and gravel therefrom, or transact business thereon."

[2] On September 8, 1961, upon the death of Boles, defendant Rose Prodon was duly appointed executrix of his last will and testament. She alone has defended this action throughout.

The corporation dedicated the use of said facilities and the use of the river front to the owners of residential lots in the tract, representing that such was *pursuant to the above-mentioned "covenants and conditions."*

At the present time, defendant threatens to use or dispose of the Boles property without regard to the rights of plaintiffs and other residential lot owners. The crucial inquiry of course is the determination of *what rights* were created under the Bettencourt deed.

### GOLF COURSE AND ALLIED FACILITIES

In sustaining the demurrers to the Second Amended Complaint and the Third Amended Complaint, the lower court ruled that the complaint "fails to allege any obligation on the part of defendant or his predecessors in title to construct, establish, maintain or operate a golf course, tennis court or a golf and country club, for the use and benefit of plaintiffs or anyone else."

This ruling is quite obviously based upon the premise that clause SIXTH becomes effective only "*if* the Grantors in future construct a Golf Course," et cetera. (Italics ours.)

In apparent recognition of the soundness of this ruling, the plaintiffs have *deleted* from the instant complaint the following allegation, which allegation was included in all of the prior complaints: "That said defendants and each of them at the time of the filing of this complaint have failed, refused and neglected to provide and maintain said golf course, tennis court, golf and country club and club house in accordance with the rights, easements and rights of way to the plaintiffs and those they represent. . . ."

Also deleted from the instant complaint is the following portion of the prayer, which portion was included in all of the prior complaints: "That the defendants . . . be ordered to provide and maintain a golf course, tennis court, golf and country club and club house."

In short, plaintiffs no longer contend that defendant has any affirmative obligation to construct any of the recreational facilities referred to in clause SIXTH of the Bettencourt deed and the other deeds executed by Hacienda, Inc.

As stated by plaintiffs, "no cause of action is claimed based on any affirmative obligation of respondent to construct and maintain the various facilities, as aforesaid. . . ." Plaintiffs do not seek "to have the court affirmatively compel respondents to erect, construct and maintain the recreational facilities as the same were maintained and operated in 1928."

Consequently, plaintiffs do not place particular reliance upon the conduct of Hacienda, Inc. in constructing the recreational facilities and maintaining them for a time, except to indicate that such was done with specific reference to the rights granted under the Bettencourt deed.

Despite such conduct, the determination of *what rights were created* rests on an evaluation of the provisions of the deed itself. According to plaintiffs' argument, "the Bettencourt deed and other similar deeds did sufficiently create and establish the easements and rights claimed by appellants as successors in interest to the original grantees."

Turning then to the Bettencourt deed and the crucial clause SIXTH, it is readily apparent that whatever right was granted concerning a golf course "and other facilities and accommodations for allied outdoor sports," that right was *conditional* upon there being in existence such facilities.

Since it is conceded that there is no affirmative duty on defendant to construct or maintain such facilities, the only argument left to plaintiffs is that defendant is under an obligation to preserve the tract property acquired from Hacienda, Inc. in such condition that it would be possible for someone in the future, *if he so desired,* to construct the recreational facilities.

There is no indication whatever in the Bettencourt deed that Hacienda, Inc. undertook the duty of preservation. In the absence of clear language showing that it did, it would be entirely unreasonable to imply such a burden from the wholly conditional provision in clause SIXTH.

It follows therefore that plaintiffs have no presently enforceable rights founded upon clauses SIXTH and NINTH and that defendant may make any lawful use she desires of the Boles' property which is allegedly affected by said clauses.

### RUSSIAN RIVER BEACHES

A different situation exists concerning the alleged easement to use the beaches within the tract for recreational purposes. Clause TWELFTH of the Bettencourt deed indicates a direct, present transfer of such an easement.

Although the exact location of the beaches is not specified in the deed, it seems clear that "the river front" referred to was limited to beaches within the tract. There is nothing to indicate that Hacienda, Inc., the grantor, owned any property outside of the tract. (See *Wagner* v. *McConnell* (1956) 141 Cal.App.2d 370 [296 P.2d 915].)

The right of way claimed by plaintiffs for access to and from these beaches would be necessarily implied from the grant of the beach easement. (See 2 Witkin, Summary of Cal. Law (1960) Real Property, § 188, p. 1027.)

Having determined that the Bettencourt deed sufficiently alleged the creation of the beach easement, it remains to consider whether plaintiffs have stated a cause of action for enforcement thereof against defendant. To do so it must be alleged "that the plaintiff is the owner of a described right of way or other easement over defendant's land, and that such easement is appurtenant to plaintiff's land. . . ." (*Corea* v. *Higuera* (1908) 153 Cal. 451, 455 [95 P. 882]; see also, *Roth* v. *Cottrell* (1952) 112 Cal.App.2d 621 [246 P.2d 958].)

The Bettencourt deed and the allegations relative thereto sufficiently show the existence and present ownership of an easement appurtenant as to the beaches. Other allegations adequately describe the location of the easement.

"[W]here it is sought to have it decreed that real property of a person is subject to a use or easement in favor of another, the property affected must be described in the pleadings with such certainty as to enable the party against whom the claim is made to definitely know exactly what portion of his property is so claimed. . . ." (*Leverone* v. *Weakley* (1909) 155 Cal. 395, 398 [101 P. 304].)

In the instant case, plaintiffs have identified the property affected by the claimed easement as "Haciendas del Rio Golf and Country Club" as recorded in the office of the county recorder, Sonoma County. This action was brought on behalf of all those *except defendant,* who own property within the tract. Thus, by necessary implication, *any* river front owned by defendant within the tract is alleged to be subject to easement.

These allegations sufficiently identify the claimed beach easement. Where land has a descriptive name, it may be adequately described by its name alone. (See Civ. Code § 1092.)

Consequently, it was error to sustain the general demurrer to the Fourth Amended Complaint as to the cause of action based upon clause TWELFTH of the Bettencourt deed.

Special demurrers (ambiguity, unintelligibility, and uncertainty) were also interposed and sustained. Since the complaint was in part good against a general demurrer, it was improper to sustain these special demurrers without leave to amend. (See *Wilk* v. *Vencill* (1947) 30 Cal.2d 104, 109 [180 P.2d 351]; *Columbia Pictures Corp.* v. *DeToth* (1945) 26

Cal.2d 753, 762 [161 P.2d 217, 162 A.L.R. 747] ; *Kauffman* v. *Bobo & Wood* (1950) 99 Cal.App.2d 322, 327 [221 P.2d 750].) On remand, the trial court may require whatever clarifications of the complaint it may in its discretion deem necessary.

The judgment of dismissal is reversed, and the cause is remanded for further proceedings consistent with the views expressed herein.

Shoemaker, P. J., and Taylor, J., concurred.

A petition for a rehearing was denied July 28, 1967, and appellants' petition for a hearing by the Supreme Court was denied September 21, 1967.